TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | No. 99-614 |
| of | : | August 4, 1999 |
| BILL LOCKYER<br>Attorney General | : | |
| ROBERT L. MUKAI<br>Deputy Attorney General | : | |

ART PULASKI has requested this office to grant leave to sue in quo warranto upon the following question:

May a person with a background in the field of management serve as the public member of the Occupational Safety and Health Standards Board?

CONCLUSION

Whether a person with a background in the field of management may serve as the public member of the Occupational Safety and Health Standards Board presents substantial issues of fact and law that warrant the granting of leave to sue in quo warranto.

PARTIES

ART PULASKI, Executive Secretary-Treasurer of the California Labor Federation, AFL-CIO, contends that SOPAC M. TOMPKINS ("Defendant") is unlawfully holding and exercising the office of public member of the Occupational Safety and Health Standards Board ("Board") due to her background in the field of management.

MATERIAL FACTS

On September 21, 1994, Defendant was appointed by the Governor to the Board from the field of management for a four-year term. At the time, Defendant was president of Sopac and Associates, a real estate management consulting firm, and was the owner and operator of the McCarthy Creek Ranch and the business manager of the River Valley Ranch. The Governor's announcement of the appointment indicated that from 1985 to 1986, Defendant was the project manager for Beauchamp Enterprises, Inc., where she served as the representative for construction, operation, and leasing of office, hotel, and restaurant complexes in Orange County, and that between 1982 and 1985, she served as a vice president and regional manager of CDS Development of California, Inc.

On December 21, 1998, Defendant was reappointed to the Board as the public member and took the oath of office on January 12, 1999. Defendant continues to be president of Sopac and Associates and the owner and operator of the McCarthy Creek Ranch and the business manager of the River Valley Ranch.

ANALYSIS

In deciding whether to grant leave to sue in the name of the People of the State of California, we consider whether there exists a substantial question of fact or law that requires judicial resolution, and if so, whether the filing of an action in the nature of quo warranto would serve the overall public interest. (80 Ops.Cal.Atty.Gen. 242, 243 (1997).) An action in quo warranto is an appropriate remedy to test the right of a person to hold public office. (*Hallinan* v. *Mellon* (1963) 218 Cal.App.2d 342, 347-348; 81 Ops.Cal.Atty.Gen. 207, 208 (1998).)

The Board is comprised of seven members appointed by the Governor. Labor Code section 140, subdivision (a)[1] provides:

---

[1] All references hereafter to the Labor Code are by section number only.

"There is in the Department of Industrial Relations, the Occupational Safety and Health Standards Board which consists of seven members who shall be appointed by the Governor. Two members shall be from the field of management, two members shall be from the field of labor, one member shall be from the field of occupational health, one member shall be from the field of occupational safety and one member shall be from the general public. Members representing occupational safety and health fields and the public member shall be selected from other than the fields of management or labor."

Among its various duties, the Board is responsible for adopting occupational safety and health standards and orders. (§ 142.3.) It may also grant a variance to an employer from any standard or order. (§ 143.)

Section 140 is typical of a number of statutes establishing boards and commissions in which the Legislature has designated certain qualifications for membership. In 64 Ops.Cal.Atty.Gen. 685 (1981), we analyzed a variety of these statutes, stating in part with respect to whether a physician could be selected as the "public member" of the California Health Facilities Authority:

"Initially, we note that nowhere in section 15433 has the Legislature stated that a physician and surgeon may not be representative of the public. Such conclusion may only be made by inference from the fact that, with respect to the appointees of the Senate Rules Committee, one member must be a licensed physician and surgeon, or perhaps from the fact that physicians work in health facilities. However, when the Legislature desires to exclude a member of a particular class or profession from serving as a 'public member' it appears to specifically so provide. Thus, for example, a licensed physician and surgeon may not serve as a 'public member' on the Board of Medical Quality Assurance, nor may a licensed barber serve in such capacity on the Barber's Board.

"Furthermore, we are not considering in section 15433 a licensing or regulatory board where it would be logical to exclude as 'public members' the very persons who are being regulated. We are dealing merely with a board which will pass upon and make loans to health facilities. . . .

". . . Several instances have been discovered in various statutes where the Legislature has specifically specified that the 'public member' should be someone conversant with the area or subject matter to be considered by the particular board. For example, with respect to the State Board of Examiners of Nursing Home Administrators, four of the nine board members must be actively engaged in the administration of nursing homes, and five members 'shall

represent the general public.' (Bus. & Prof. Code, §§ 3910-3912.)  Although no board member may be an owner or supervising employee or manager of a nursing home or hospital or have a financial interest therein, '[o]ne of the *public members* shall be actively engaged in the practice of medicine, with a demonstrated interest in convalescent and chronic care, and one shall be actively engaged as an educator in health care administration.'  (Bus. & Prof. Code, § 3912, emphasis added.)  The analogy between this situation and the one being considered in this opinion is remarkable.  Another example may be found with respect to the Hearing Aid Dispensers Examining Committee where the law *requires* that one of the *public* members 'shall be a licensed physician and surgeon specializing in treatment of the diseases of the ear . . . and another public member shall be an audiologist." (Bus. & Prof. Code, § 3320.)" (*Id.*, at pp. 687-688, fn. omitted.)

We noted in our 1981 opinion the following examples of situations where the Legislature excluded members of a particular class or profession from serving as a public member of a state board or committee:

"Business and Professions Code, sections 1602 (Board of Dental Examiners); 2077 (Board of Medical Quality Assurance); 2702 (Board of Nurse Examiners); 2842 (Board of Vocational Nurse and Psychiatric Technicians Examiners); 2923 (Psychology Examining Committee, Board of Medical Quality Assurance); 3011 (Board of Optometry); 4001 (Board of Pharmacy); 4801 (Board of Examiners in Veterinary Medicine); 5514 (Board of Architectural Examiners); 5620 (Board of Landscape Architects); 6013.5 (State Bar); 6501 (Board of Barber Examiners); 6711 (Board of Registration for Professional Engineers); 7002 (Contractors' State License Board); 7302 (Board of Cosmetology); 7602 (Board of Funeral Directors and Embalmers); 8521 (Structural Pest Control Board); 9626 (Cemetery Board)." (*Id.*, at p. 687, fn. 5.)

While some of these statutory provisions have changed since our 1981 opinion, the Legislature has currently excluded particular classes of persons from serving as public members on a variety of boards and commissions. (See, e.g., §148 [public member of the three-member Occupational Safety and Health Appeals Board may not be from fields of management or labor]; Ed. Code, § 44210, subd. (e) [four public representatives on Commission for Teacher Credentialing shall not "have been employed by an elementary or secondary school district in a position requiring certification, or shall have served as a school district governing board member in the five-year period immediately prior to his or her appointment to the commission"]; Bus. & Prof. Code, §§ 2702, 2842, 4001, 4801 [licentiates of healing arts licensing board prohibited from holding public member positions on Board of

Registered Nursing, Board of Vocational Nurse and Psychiatric Technician Examiners, Board of Pharmacy, Board of Veterinary Medicine]; Bus. & Prof. Code, § 3912 [anyone who is, or whose spouse, child, parent, brother or sister is engaged in management, ownership, operation or supervision of nursing home or hospital foreclosed from holding public member position on Board of Examiners of Nursing Home Administrators].)  Of particular significance to the present inquiry is the prohibition contained in Business and Professions Code section 6013.5, barring anyone "admitted to practice before any court in the United States" from ever serving as a public member on the Board of Governors of the State Bar of California.[2]

Returning to the requirements of section 140, we find that the Legislature intended for the Board to have diversity in its membership.  Two members are to be selected from the field of management, two from the field of labor, one from the field of occupational health, one from the field of occupational safety, and one from the general public.  The Legislature has prohibited the occupational safety, occupational health, and public members from being selected from "the fields of management or labor."

In the present circumstances, Defendant was chosen from the field of management in 1994 and had the same management background in 1998 when she was chosen as the public member upon completion of her term as a member from the field of management.

We believe substantial questions of fact and law exist concerning whether Defendant qualified as a person "other than from the fields of management or labor" at the time she was reappointed to the Board in 1998.

PUBLIC INTEREST

Since, as a general rule, we have viewed the existence of a substantial question of fact or law as presenting a sufficient "public purpose" to warrant the granting of leave to sue, leave will be denied only in the presence of other overriding considerations. (81 Ops.Cal.Atty.Gen. 94, 98 (1998).)  Here, we find no overriding considerations that would prevent presenting this matter for judicial resolution.

Accordingly, the application for leave to sue in quo warranto is GRANTED.

---

[2] In 58 Ops.Cal.Atty.Gen. 808 (1975), the "public members" of a commission were found to be those who were not officials representing designated government agencies.  Here, we need not determine generally who would qualify as the "public member" of the Board, since the focus of our inquiry is upon the Legislature's express prohibition against selecting the public member from "the fields of management or labor."  (§ 140, subd. (a).)

* * * * *

99-614